McFarland, J.,
delivered the opinion of the court.
L. J. & C. W. Coker, on the — day of November, 1866, filed their attachment, bill in the Chancery Court at Chattanooga, against Lewis Spitzer & Co., R. K. Byrd, and others, in which they charged that Lewis Spitzer & Co. were indebted to them, and had fraudulently disposed of their property; that a large amount of their property had been previously conveyed by said firm to one Gillespie, in trust to secure R. *585 K. Byrd from loss on account of his indorsement for the firm. This deed was alleged to be fraudulent. An attachment was issued, and levied upon the property in question. Lewis Spitzer & Co. employed Tomlinson Fort, an attorney at law, to defend the cause for them, and they desired to replevy the property. Thos. J. Carlisle, who had been a member of the firm, and who was a friend of Byrd, and who in his testimony says he had been requested by Byrd to look after his interest in the matter of business with the firm, advised and directed Fort to sign Byrd’s name to the replevin bond; and on the 1st day of December, 1866, a replevin bond was executed in the sum of $2,500. To this bond the name of R. K. Byrd was signed by Fort, as solicitor. The property upon this was released, and turned over, as we infer, to Lewis Spitzer & Co. It does not appear that at this time Byrd had any knowledge of the pendency of the suit. He lived in an adjoining eounty, and was not served with process until the 16th of the same month.
The complainants in the cause prosecuted the same successfully, and recovered a decree against Lewis Spitzer & Co. for $1,372.51, and also, to satisfy the same, a decree was rendered on the replevin bond for the same amount; but in this decree the name of Byrd was omitted. No reason for this appears on the face of the record, but in proof in this case it appears that his name was intentionally stricken out of the decree, upon the assumption — which the complainants in the case seem to have admitted — that his *586 name was signed to the bond without sufficient authority. There was no adjudication of this question, but his name simply omitted in the decree.
The complainants having, as they allege, failed to-collect their decree, brought this action against Fort to recover the amount. from him, upon the ground that they have lost their debt by his wrongful act in signing the name of Byrd to the bond without authority, Byrd being now the only solvent party.
The defendant filed a general denial of the cause of action, giving notice of his real defenses, the nature of which will hereafter appear.
It appears clearly that Fort signed the name of Byrd to the bond under the direction of Carlisle, who assumed to be acting for Byrd, and his good faith in the transaction cannot be doubted. It is not, however, now insisted by Fort that Carlisle had actual authority from Byrd, his defense is mainly rested upon the ground of a subsequent ratification by Byrd. It appears that soon after the bond was given, perhaps about the latter part of the same month, Byrd, Car-lisle and Fort met at Chattanooga, and a conversation was had upon the subject, and it was upon the effect of the evidence as to this conversation that the case probably turned under the instructions of the court.
Byrd, Carlisle and Fort were the witnesses examined in regard to this conversation. Byrd denies the authority of • Fort to sign his name to the bond, or that he ever employed him, or authorized his employment. At first he did not remember the conversation referred to, but afterward remembered that some *587 thing was said about it, and says that in that conversation he told Fort he had no authority to sign his name. “ Fort and Carlisle then explained to me that it was done for my benéfit, and that I could or would lose nothing by it. I said, well, if it was done for my benefit, and I did not lose any thing by it, I did not care pro or con for it. I may have told them to do the best they could with it, or make the best defense they could in the case, but if I did I don’t remember it.”
Carlisle varies this statement somewhat. He says “ Byrd, defendant and myself met in a saloon when every thing that had been done was explained to him. He said he was satisfied that he, defendant and I had acted in good faith. He said in substance that if what he did was for his interest, and that he was-not to be made liable, he was satisfied; . . . that at that time Fort could have indemnified himself out of the property of Spit-zer & Co.”
Fort, in his testimony, shows more fully that a full explanation of the nature of the transaction was-made to Byrd, and of the importance of replevying the property. He says after a full explanation of every thing that had been done, every step that had been taken, Col. Byrd said that he had no doubt but that we had done the best we could for his interest, and as. we parted he said, “Well,- you will have to do the best you can, and take care of my interest the best you can.”
It is not necessary, for our present purposes, to set forth their evidence more fully. The Circuit Judge, *588 in his charge to the jury, instructed them that if Byrd, with a full knowledge of the facts, ratified the act of Eort in signing his name, then he was bound by it, and if he was bound the plaintiff could not recover; “but if when fully informed he ratified the act ■only conditionally, or in the event it did him no harm, then it would be no such ratification as the law contemplates to bind him.”
The verdict and judgment were for the plaintiff for the full amount of their judgment on the bond, less $500 voluntarily paid by Fort. Fort has appealed in error, and among other things assigns as error the part of the charge above set forth. Since the abolishment of private seals by statute, it is not necessary to show a formal redelivery of the bond in order to bind the party, but it may be ratified by acts in parol.
It is argued by the plaintiff’s counsel that if Fort had no authority in the first instance to sign Byrd’s name to the bond, then by this unauthorized act of Fort, the plaintiff’s right of action instantly accrued, and a subsequent ratification of the act by Byrd would not remove Fort’s liability. This proportion is not maintainable. The right of the plaintiff to proceed against the obligors in this bond depended upon their successful prosecution of their suit against Lewis Spit-zer & Co., and upon this their right to proceed upon the bond accrued. The authorities satisfactorily establish, with but few exceptions, the following proposition: “An act done for another by a person not assuming to act for himself, but for such other person, *589 though without any precedent authority whatever, becomes the act of the principal, if subsequently ratified by him. In that case the principal is bound by the act,' whether it be for his detriment or advantage, and whether it be founded on a fiat or a contract to the same extent as by and with all the consequences which follow from the same act done by his previous authority.” See 1 American - Leading Cases, p. 572, where the authorities are collected. To make out the plaintiff’s right to recover in this cause, it must appear that when they obtained their decree against Spitzer & Co., they were not entitled to a decree on the bond against Byrd by reason of the fact that his name had been signed thereto by Fort without authority, and that he was not then liable on the bond. This is, the gist of the action. So then upon the assumption which for the argument has been conceded, that Fort’s authority in the first instance was not sufficient to bind Byrd, the question as to whether he ratified it before the liability accrued, becomes a controlling one.
To understand this question it becomes important to inquire what acts will amount to a ratification in a ease of this particular character. There are in some cases what is termed express ratification, in others ratification will be presumed from the acts of the party. In other cases “ assent may be presumed by acquiescence after notice.” It is frequently said that the principal must disavow the act promptly after notice, or he will be bound by it;” and this, it is said, is so “ wherever a loss may accrue from a delay on *590 the part of the principal to disavow the agency or where the transaction may turn out, a profit or loss according to circumstances.” 1 Am. Lead. Cases, 573, and authority there cited. Coons v. Buckner, 1 Heis.; Williams v. Stoner, 6 Col. If the principal, after knowledge of the act, avails himself of its advantages, he will be bound by it — same authorities.
In some cases, the taking of. benefit under the act operates as an estoppel, in others, it is evidence of assent. We now apply these principles to the present case. It is not our province to determine the meaning of the language used by Byrd in the conversation referred to, nor the effect of the evidence, further than may be necessary to ascertain the proper application of the law in view of this and the other facts in the case. Byrd was a party to the cause in which the bond was given, and had at the time been served with process. He had a direct and important interest involved: he was endorser for the firm’ of Lewis Spitzer & Co., and the property attached had been conveyed in trust to secure him; if the complainants in the case were successful this security would be taken from him; if they failed, his security remained. If. the property was replevied and released from the attachment it gave him the opportunity,' i'f he desired it, to subject the same to the debts for which he was liable. After the bill was filed and process served upon him, he is informed that the property has been replevied, and his name signed to the bond, and as they say, “the whole matter explained to him.” He knew that Fort, though he acted without authority, *591 bad acted in good faith, believing be had authority. He (Fort) was then informed that his authority in the first instance was not sufficient. Upon this state of facts, what ,was Byrd’s duty? We should say upon the authority referred to, that if he did not intend to adopt the act and take the consequences, he should have repudiated it promptly and without equivocation. Justice to Fort and the complainants in the case required this. He could not adopt part and reject the balance of the act, he must take it as a whole. He could not be allowed to assume the position that he would adopt the act and take its benefit if the cause resulted in his favor, but repudiate it if it should go against him. We do not say there might not be a case where the principal could ratify the act of another upon a condition, but we do say he could not ratify the act upon such a condition as seems to be implied in the charge of the Circuit Judge, that is, upon the condition “the act was to do him no harm.” This involves a palpable inconsistency. It would mean that he would elect to take the chances of a benefit under the act, but he would wait to see the result before he would determine to suffer any loss from it. We must take it for granted that when, in the language of the witnesses, “ the matter was fully explained to Byrd < that he understood it, that he understood how he was interested in the matter, and that as his name was to the bond if he ratified the act, that if complainants were successful in the suit he, with the others, was liable upon the bond. We can hardly assume that he misunderstood this, when he says that *592 Fort and Carlisle explained to him that the act was done for his benefit, and that he could suffer no loss from it. We should take it that this meant that he would suffer no loss either because he would be successful in the suit, or if not, Spitzer & Co. would meet the liability or return the property. We do not see what other explanation could have been given consistent with the idea of his name remaining without objection upon the bond. It must be borne in mind that the conversation referred to is to be taken in connection with the other facts, and Byrd’s failure to take any other steps in the transaction.
We are of opinion that the charge, as applied to the facts is erroneous, and calculated to mislead the jury. The jury should have been told that it was Byrd’s duty, upon being informed of what had been done, to repudiate the act if he did not intend to be bound by it, and that he could not ratify upon the condition that he suffered no loss. This renders it unnecessary to examine the question as to the newly discovered evidence.
For the error indicated the judgment will be reversed and the cause remanded for a new trial.